MATILDA M. KOHL and WILLIAM A. KOHL, Plaintiffs, *v.* THE FIRST TRUST COMPANY OF TONAWANDA, Defendant.

Supreme Court, Niagara County, September 22, 1937.

*Watts & Findlay [Francis T. Findlay* and *Bernard Sax* of counsel], for the plaintiffs.

*Knoell & Bassett,* for the defendant.

HORTON, Official Referee. In 1927 W. G. Palmer, Inc., applied to defendant for a $25,000 loan which was declined. About a week later plaintiff William A. Kohl, secretary of the corporation, asked the president of the bank for a loan of $10,000 for the corporation upon his indorsement. This was granted, it being arranged that plaintiff give his note for the $10,000 and then get a corporation note signed by Mr. Palmer, the president, and indorsed in two places on the back so as to make Palmer personally liable. This note was obtained within a few days and indorsed to the defendant and retained as collateral by the defendant, with other securities belonging to Kohl, as collateral to plaintiff's note. About a week after this transaction defendant also made a loan of $10,000 to George W. Gilmore, another officer of W. G. Palmer, Inc., in the same manner and for the benefit of the corporation, taking Gilmore's personal note and the corporation note indorsed by

Gilmore as collateral security. As the bank officials understood that these loans were entirely for the benefit of the corporation, it had been arranged originally that the corporation was to amortize the loans and to pay the interest. Fifteen hundred dollars was paid on each of these notes by the corporation, nothing of principal or interest ever having been paid by either plaintiff or Gilmore. In 1930 Mr. Henry P. Smith, president of the defendant bank, suggested that it would be well to get from Mrs. Palmer, if possible, an assignment of a mortgage of $30,000 which she held upon the corporation property, saying that it was his purpose to protect plaintiff and Gilmore as well as the bank. A little later this assignment was delivered to the bank and Mr. Smith then said to the plaintiff, " Everything is taken care of and you are well protected." The assignment of this mortgage, dated July 29, 1930, recited that it was as collateral and continuing security for the two notes above referred to and another of $10,000 by the corporation dated July 8, 1930, and recited that the said two notes (Kohl and Gilmore) " are held by said Trust Company as collateral security, and this assignment is to secure the payment thereof to said Trust Company as well as the payment of said $10,000 dated July 8, 1930."

The corporation having gone into a Federal receivership in 1931, the defendant on February 26, 1934, began an action to foreclose the collateral mortgage above referred to, reciting in its complaint that $8,500 was unpaid upon the plaintiff's note and the Gilmore note respectively and $5,000 on the $10,000 note of July 8, 1930, making the plaintiff a party to the action and demanding judgment that the mortgaged premises be sold, the amount due the bank on the three notes adjudged and that from the moneys received on the foreclosure sale the bank be paid the amount due it on said notes and that the rights of Harriett C. Palmer to any balance be determined.

Kohl and Gilmore did not appear in this action in which the property was sold for $8,800, which amount was applied to the payment of taxes, costs and disbursements, leaving some $5,400 which discharged the $5,000 note upon which Mrs. Palmer was indorser. Although the foreclosure sale produced enough to pay only the corporate note as above, the bank actually transferred upon its books the property from the loan account and set it up in real estate, computing the cost as the amount unpaid on the corporate note and the Gilmore note, together with costs, taxes and interest, making a total of something over $17,000. By this process of figuring the Gilmore note was in effect marked upon the books of the bank, and deemed, paid.

During the foreclosure Kohl's attorney asked the attorneys for the bank if any deficiency judgment was to be asked as against Kohl, and upon being informed that no deficiency would be sought he did not appear in the action, and Kohl was not represented in any way. He now claims that a wrong was done him in the conduct of this foreclosure in that although the complaint in the action recited his note, the assignment recited it was for the benefit of his note as well as the others, the president of the bank expressly told him the same thing and he was made a party to the foreclosure action upon that theory, the bank's attorneys, in spite of the allegations in the complaint, the documentary evidence, and the declaration of the bank president, failed to make any proof whatever of plaintiff's notes in the action, in spite of the fact that their attention was expressly called to it. The result of this was that no computation was made in the foreclosure of plaintiff's note and he, therefore, obtained no benefit whatever of. the assignment of mortgage which was for his benefit as well as that of the others. Force is added to this claim of the plaintiff by reason of the fact that Gilmore, who was in the identical position of plaintiff in the foreclosure, was relieved from his obligation and the further fact that the property foreclosed was assessed at the time at over $63,000 and valued by the bank at $35,000 and at $45,000 by plaintiff, so that the foreclosure price of $8,800 with the $8,500 Gilmore note added to it, brought the total of the amount paid by the bank according to its books to less than one-half of the value set by the bank itself and only a little over one-third of the value put upon the property by the plaintiff.

The plaintiff insists that if his note had been kept in the foreclosure the bank would have charged that off also with the value of the property at $25,000, or whatever sum was required to balance the transaction upon its books..

The court agrees with plaintiff that a great wrong was done him in this transaction. The question is whether this was *damnum absque injuria* or whether he has now any legal redress. The defendant insists that plaintiff's remedy, if any, must be had in the foreclosure action and that it cannot now be attacked collaterally, while plaintiff argues just as strenuously that since there was no answer by Kohl in the foreclosure the judgment could not be more favorable to the plaintiff than that demanded in the complaint, citing section 479 of the Civil Practice Act; *Clapp* v. *McCabe* (155 N. Y. 525); *Coles* v. *Carroll* (273 id. 86) and many other cases of like import to the effect that the plaintiff may attack an unauthorized judgment in any form that he may elect. He chose to attack it in a court of equity, claiming that at worst the plaintiff

was entitled to his *pro rata* share of the amount received upon the foreclosure sale *(Orleans County Nat. Bank v. Moore,* 112 N. Y. 543) and that a court of equity which regards that as done which ought to have been done and which looks at the intent and the substance rather than the form of a transaction, should find here that the defendant in taking this assignment of mortgage and in foreclosing the same, was acting as trustee for the plaintiff to the extent of his note and that the court should impress a trust upon this mortgage and upon the proceeds of any foreclosure of it in the same proportion as the $8,500 note of plaintiff bore to the total amount of indebtedness which said mortgage secured. While the complaint is not particularly clear as to this, the court believes that there are sufficient allegations therein to base a cause of action as for a breach of trust on the part of the defendant. In any event, as the court granted at the trial the application of plaintiffs' attorneys to conform the pleadings to the proof, the complaint may be deemed amended to set out the appropriate allegations to base a cause of action upon this ground. The court feels that under all the circumstances shown here without dispute a trust was created whereby the defendant became the trustee or agent for the plaintiff Kohl as well as Gilmore and that the omission on the part of the bank to prove the plaintiff's note in the foreclosure was a breach of such trust, which trust did not terminate upon the foreclosure of the mortgage, but a lien for the plaintiff's proportionate share of the proceeds received is impressed thereon.

The testimony which the bank failed even to attempt to refute points to the conclusion that the mortgage was assigned for the purpose of securing payment in full of these collateral notes which were the obligation of Kohl and Gilmore in name only. Seemingly, then, a contract for the benefit of Kohl and Gilmore had been made between the bank and Mrs. Palmer which induced Mrs. Palmer to assign this mortgage to the bank *(Seaver v. Ransom,* 224 N. Y. 233). Judge POUND there included in enforcible third party contracts " the cases where, at the request of the party to the contract, the promise runs directly to the beneficiary although he does not furnish the consideration."

Relief can be granted to the plaintiffs in this action, for the same judge concluded his opinion in the *Ransom* case by stating, " The equities are with the plaintiff and they may be enforced in this action, whether it be regarded as an action for damages or an action for specific performance to convert the defendants into trustees for plaintiff's benefit under the agreement."

Since the defendant by its breach of trust has damaged the plaintiffs in that they were not given credit for the sum of $8,500

realized upon this collateral, it must satisfy this loss. Since the plaintiffs' indebtedness to the bank would have been reduced had defendant taken the proper course, plaintiffs should be awarded interest from December 1, 1932. The court, therefore, directs judgment, with costs in favor of the plaintiffs and against the defendant for the sum of $8,500, the amount outstanding upon the note of William A. Kohl, indorsed by Matilda M. Kohl, with interest, from which amount, however, should be deducted any indebtedness owing by plaintiffs to defendant upon transactions other than those involved herein. The amount of this indebtedness may easily be arrived at by agreement of counsel. In this manner the court believes that complete equity is done to all parties.