George Frankenthaler, S.
This is a proceeding to determine the validity and effect of a contract to bequeath. The petitioner is the executor designated in the will of deceased and the respondents are a group of persons named as legatees in an earlier will which was executed in accordance with the provisions of the agreement the construction of which is sought. Louis and Max Conay were brothers and partners in a business devoted to the manufacture, importation and sale of gloves. On December 23,1926, they entered into an agreement in which Louis obligated himself to bequeath 50% of his interest in the business to Max and the latter agreed to leave his entire interest to Louis, the survivor to pay all of the debts of the business. It was expressly stated that Louis was free to dispose of the other half of his share. Max executed a will December 23, 1926 leaving his interest in the business to Louis in accordance with the terms of their agreement. Louis executed a will December 28, 1927 bequeathing 50% of his interest to Max if he *1092 survived; the other half, or the entire interest if Max predeceased him, was bequeathed to various relatives. The residue of Max’ estate was bequeathed as in intestacy while Louis divided his residuary estate among various relatives, 25% thereof passing to those who received the business interest.
By agreement dated March 4, 1931 the parties modified the prior contract and bound themselves to bequeath their interests in the business in accordance with the terms of wills executed on the same day. It was further stipulated in the amended agreement that neither would ‘ ‘ modify or change in any manner or form the respective wills executed by each of them on this day excepting upon the written consent of both of the parties hereto.” Louis’ will of that day provided for a bequest of 25% of his interest in the firm ‘ ‘ unto my beloved brother Max if he shall survive me ” and disposed of the balance in varying proportions to two brothers, a sister, two nephews and a brother-in-law. Max’ will bequeathed his entire interest to Louis upon condition that Louis pay all of the debts of the company and the sum of $7,500 a year to Max’ wife for the duration of her widowhood.
After the death of Max on June 14,1939, his widow and Louis entered into an agreement with the guardians of the former’s daughter Sylvia, under which the gift of Max’ interest in the business was perfected and Louis made payment of a lump sum in discharge of the obligation to the widow imposed by his brother’s will as a condition of the bequest. Some years thereafter Louis married and on September 13, 1950 he executed a will which made no provision whatsoever for the persons named in the 1931 will as legatees of 75% of his interest in the firm. That group now argues they are the beneficiaries of the contract between Louis and his brother which they contend bound the former to refrain from altering those provisions of his 1931 will which operated in their favor. The executor asserts in opposition that Max’ death left the testator free to dispose of his estate in any way he saw fit and contends that the estate is entitled to a decree permitting its administration and disposition in accordance with the terms of the 1950 will which has been admitted to probate in this court.
The right of the respondents to challenge the present testamentary program which deprives them of a share in its benefits depends entirely upon their ability to establish a status as donee beneficaries of the 1931 agreement and this they have failed to do. A person not a party to the contract acquires the status of donee beneficiary, and is therefore entitled to enforcement of the contract, if and only if the promise is particularly exacted *1093 by the promisee for the benefit of such third person (Seaver v. Ransom, 224 N. Y. 233; Dreyer v. Hyde, 251 N. Y. 450; Skinner Bros. Mfg. Co. v. Shevlin Eng. Co., 231 App. Div. 656, affd. 257 N. Y. 562; 2 Williston, Contracts [Rev. ed.], §§ 357, 364A; Restatement, Contracts, § 133). In the absence of proof of such a promise, a party benefited by the contract is an “ incidental beneficiary ” and “ acquires by virtue of the promise no right against the promisor or the promisee ” (Restatement, Contracts, § 147).
The New York cases cast upon a person seeking to obtain the benefits of a contract to which he was not a party the burden of establishing that it was intended for his benefit. In Seaver v. Ransom (224 N. Y. 233, 237, supra) the court speaks in terms of the ‘ ‘ right of the beneficiary to sue on a contract made expressly for his benefit ”. (Emphasis supplied.) A later statement of the rule is to be found in Skinner Bros, Mfg. Co. v. Shevlin Eng. Co. (supra). There the court said (231 App. Div. 656, 658-659):
“ While a third party may recover in certain circumstances upon a contract made by others for the benefit of the third party (Seaver v. Ransom, 224 N. Y. 233), yet it is a fundamental prerequisite that the alleged promisor should have made a promise for the benefit of the third party [cases cited]. In Vrooman v. Turner [69 N. Y. 280], Judge Allen, speaking for the court, said (p. 283): ‘ To give a third party who may derive a benefit from the performance of the promise, an action, there must be, first, an intent by the promisee to secure some benefit to the third party, * *
“ In Beveridge v. N. Y. El. R. R. Co. [112 N. Y. 1], Judge Gray said (at p. 26): ‘ Where the plaintiff seeks to base his right to maintain his action against a third party upon a contract made between that party and another, it must be one made or intended for his benefit. Such a beneficial intent must be clearly found in the agreement. * * * But in all of the cases which I have examined, where the action was sustained, the facts showed that the promise clearly was for the third person’s benefit, and made with that distinct intention. ’
11 Without the existence of such a promise, no recovery may be had by the third party.” (See, also, Beveridge v. New York El. R. R. Co., 112 N. Y. 1; Hardie v. Bent Milk Food Corp., 207 App. Div. 513; Cole v. Vincent, 229 App. Div. 520.)
Analysis of the undisputed facts in this case reveals a complete failure upon the part of the respondents to prove that the agreement upon which they rely was intended for their benefit. The 1926 contract which set the pattern for the relationship *1094 between the brothers presumed to deal only with the disposition of their interests in the business. By its terms there was expressly reserved to Louis the unrestricted right to dispose of 50% of his interest, thereby indicating that Max was not interested in the manner in which Louis disposed of this half and that he exacted no promise as to its ultimate distribution. The sole concern of the brothers was the orderly transfer of the business inter se.
The 1931 agreement and wills effected no change in this basic plan. By its terms Louis incurred additional obligations in favor of Max’ widow and at the same time was obligated to bequeath only 25% of his interest to Max, but Louis’ power to dispose of that portion of Ms interest in excess of the aforesaid 25% was not expressly limited. Reading each will as part of the contract Max’ purpose in entering into it is plain, for in return for permitting Louis to reduce his bequest from a half to a quarter share of the latter’s interest in the business, Max obtained for his wife a very substantial benefit in the form of Louis’ undertaking to make her the annual payments of $7,500. Nothing in the circumstances prevailing at the time of the execution of the agreement would support the inference that Max was acting in the interest of the respondents or that he exacted from Louis on their behalf a promise to make them the bequest contained in the 1931 will. Their status as incidental rather than donee beneficiaries is emphasized by contrast with the rights of Max’ widow under the agreement. It should be noted that with minor exceptions the beneficiaries under the wills of 1926 and 1931 were the same. In light of Louis’ right under the 1926 agreement to dispose of 50% of his interest, which right was expanded and ratified in 1931, it is evident the respondents were selected as beneficiaries by Louis in the exercise of his discretion and were not designated by Max as recipients of his bounty. Consequently, as they have been unable to establish that the contract was designed for their protection ox-benefit, they are powerless to compel its enforcement in their favor.
It is urged that as the brothers executed “mutual wills” in 1931, Louis had no power to revoke his will after Max’ death and that respondents’ rights as beneficiaries were unalterably fixed in that year. However, the mere fact of the execution of mutual wills does not impinge upon the right of the survivor to revoke his will unless the beneficiaries establish an agreement to dispose of the property in a certain manner (see Rastetter v. Hoenninger, 214 N. Y. 66; Tutunjian v. Vetzigian, 299 N. Y. 315; 1 Davids, New York Law of Wills, § 423). In this respect, *1095 the doctrine of mutual wills is but a facet of the more general theory of third-party contractual rights, and as respondents have failed to establish that the contract was made in their behalf this argument must fall. Absent an intention that the agreement benefit them, respondents, who are not parties thereto, have no standing to object to decedent’s disposition. In the circumstances of this case the negation of the power to revoke ‘ ‘ except upon the written consent of both of the parties hereto ” limited the power during the lifetime of the first to die but did not otherwise affect his power to freely dispose of the property subject to the conditions imposed by the agreement (cf. Matter of Diez, 50 N. Y. 88; GooJce v. Burlingham, 105 Misc. 675).
For the reasons stated, a decree will issue in the form prayed for, the court holding that the respondents acquired no rights under the 1931 agreement enforcible against the estate. The question as to the duration of the contract between the testator and his brother becomes academic as a result of the conclusion here stated.