■ ROSALIE G. JONES et al., Respondents-Appellants, v. JOHN A. WICKS, Appellant-Respondent. (Consolidated appeals.) — In an action, based upon defendant's written stipulation dated August 19, 1959, to recover the damages which plaintiffs sustained by reason of the stay of a decree rendered August 7, 1959 by the Surrogate's Court of Nassau County in a then pending proceeding by the plaintiff administrator for instructions respecting the sale of a certain parcel of real property; such stay having been granted by order of the Surrogate made August 24, 1959 upon the defendant's said stipulation that, in the event of the affirmance of such decree upon appeal, he will pay " for damages sustained by reason of the granting of this stay;" and the defendant in this action having pleaded: (a) an affirmative defense that the plaintiff administrator made no effort to avoid or mitigate the damage caused by the stay; and (b) a counterclaim for $10,000 on the ground that plaintiffs and one Maxwell Ross (attorney for plaintiff Jones), in order to advance the personal self-interest of plaintiff Klapper (the administrator) as a real estate broker, conspired to prevent defendant from purchasing the property and used his offer in order to obtain a higher bid from another, the Miltod Corporation, the defendant appeals as follows from an order of the Supreme Court, Nassau County, entered April 6, 1961; and both the defendant and the plaintiffs cross-appeal as follows from a judgment of said court, entered July 10, 1961 upon the decision of the court after a nonjury trial for the assessment of plaintiffs' damages pursuant to said order: (1) Defendant appeals from so much of said order of April 6, 1961, as granted plaintiffs' motion, made pursuant to subdivision 5 of rule 109 of the Rules of Civil Practice, to dismiss his counterclaim on the ground that it does not state facts sufficient to constitute a cause of action; as directed that the said affirmative defense be stricken as a complete defense but allowed to stand as a partial defense to be tried upon the assessment of plaintiffs' damages; as granted plaintiffs' motion for summary judgment, made pursuant to rules 113 and 114 of the Rules of Civil Practice, by striking out defendant's counterclaim and answer except with respect to the said partial defense relating to mitigation of damages; as directed that the action be placed on the calendar for an assessment of the damages; and as directed that judgment thereafter be entered upon such assessment. (2) Defendant also appeals from said judgment which awards to the plaintiffs against him damages of $2,630.01, together with interest and costs, making a total of $2,969.01. (3) Plaintiffs cross-appeal from said judgment insofar as it fails to award them appropriate amounts of interest and insofar as it fails to award them damages in the amount of $10,604.41 with interest thereon from October 12, 1960. Order dated April 6, 1961, insofar as appealed from, affirmed, with $10 costs and disbursements to plaintiffs. Judgment reversed on the law and on the facts, with costs to plaintiffs, and action remitted to the trial court for the making and entry of an appropriate judgment consistent herewith and for such hearings incidental thereto as may become necessary. In our opinion, plaintiffs are entitled to recover from defendant damages computed from August 24, 1959, the effective date of the stay, to September 12, 1960, the sixtieth day (specified in the contract of sale for the title closing) after the decree of the Surrogate's Court made July 12, 1960, in conformity with the remittitur of the Court of Appeals. It is also our opinion that the plaintiffs are entitled to recover from defendant as such damages a total sum which shall consist of the following items: (a) all taxes paid by plaintiffs, less apportionment for the entire period; (b) interest at the legal rate

on the several amounts paid for taxes by the plaintiffs; (c) interest at a rate equal to the yield on United States Government bearer bonds, as provided in the contract between plaintiffs and said Ross, on the amount of the down payment by reason of the loss of its use for the entire period of the delay, namely, from August 24, 1959 to September 12, 1960; (d) interest at the legal rate on 25% of the purchase price, less the $16,000 down payment and less the rent adjustment; and (e) interest at the rate of 4% on the amount of the purchase-money mortgage for the entire period of delay, namely, from August 23, 1959 to September 12, 1960. Plaintiffs are also entitled to the costs and disbursements previously awarded. Findings of fact which may be inconsistent herewith are reversed, and new findings are made as indicated herein. The proceeding in the Surrogate's Court which gave rise to this action was commenced by the plaintiff administrator pursuant to section 215 of the Surrogate's Court Act, for the Surrogate's advice and direction as to the sale of a parcel of real property. The controversy submitted was whether the administrator should accept the offer of the Miltod Corporation or the offer of defendant. The Surrogate, by his said decree of August 7, 1959, approved Miltod's offer and directed that the property be sold to it. The parties then entered into said stipulation staying all proceedings under the decree pending an appeal to this court. The stipulation obligated defendant, in the event of an affirmance, to pay plaintiffs "for damages sustained by reason of the granting of the stay." A surety bond in the sum of $10,000 was filed by defendant to secure payment of the damages referred to in the stipulation. On November 16, 1959, this court reversed the decree of the Surrogate's Court; but on April 28, 1960, the Court of Appeals reversed this court's determination and remitted the matter to the Surrogate's Court with directions that the sale be made to Miltod, as originally decided by the Surrogate (*Matter of Jones,* 19 Misc 2d 234, mod. 9 A D 2d 778, revd. 8 N. Y. 2d 24). The Surrogate, on July 12, 1960, made a decree accordingly, and the closing took place on January 24, 1961, with all adjustments made by agreement as of November 28, 1960. Thereafter plaintiffs commenced the instant action to recover the sum of $12,500 (thereafter limited by their amended bill of particulars to $10,604.41) as damages sustained by reason of the granting of the stay for the period from October 10, 1959, the original scheduled closing date (60 days after the acceptance of the offer), to October 12, 1960, the rescheduled closing date (the 60-day period having been extended by agreement to 90 days). The damages claimed fall into three categories: (1) the various apportioned tax payments; (2) interest thereon; and (3) interest on the cash plaintiffs would have received but for the stay, less certain credits. Defendant's answer contained a general denial, an affirmative defense against the administrator for failing to mitigate the damages and a counterclaim based on an alleged conspiracy between plaintiff administrator and plaintiff Jones on the one hand, and one Ross, Jones' attorney, on the other hand, to use defendant's offer for the property to procure a better offer from Miltod. Plaintiffs moved for summary judgment striking out defendant's answer and for the relief demanded in the complaint, or, in the alternative, for partial summary judgment dismissing the counterclaim, or, in the alternative, to dismiss the counterclaim for failure to state a cause of action. Special Term, in the order appealed from, granted plaintiffs' motion to the extent heretofore indicated, and directed judgment in favor of plaintiffs for an amount to be ascertained upon a trial for the assessment of damages. After such trial plaintiffs' damages were assessed at $2,630.01, and judgment was entered accordingly. The trial court computed the damages only for the period from October 10, 1959, the original scheduled closing date, to February 1, 1960, on the theory that title would have closed on or about the latter date if this court by its decision of November 16, 1959, had

affirmed the Surrogate's decree instead of reversing it. The trial court held that plaintiffs are entitled to damages only for the period of delay resulting from the appeal to this court. The damages were limited to the various tax payments made by plaintiffs and for the loss of interest on the purchase-money mortgage for the above period. The issues raised by the counterclaim have been determined adversely to defendant by the Surrogate's Court, the Appellate Division, and the Court of Appeals (*Matter of Jones,* 19 Misc 2d 234, mod. 9 A D 2d 778, revd. 8 N Y 2d 24, *supra*). The effect of the decision of each court was that defendant did not have an euforcible contract and that plaintiffs in arranging for the sale to Miltod breached no duty which they owed to defendant. We find no merit in defendant's contention that his liability under the stipulation is limited to taxable costs. In our opinion, the stipulation which provided that defendant, if the decree be affirmed, will pay "for damages sustained by reason of the granting of such stay," is sufficiently definite and precise to subject him to the liability which plaintiffs seek to impose. If not for the stipulation, plaintiffs could have sold the property under the decree of the Surrogate's Court dated August 7, 1959. Forbearance to sell was ample consideration for the promise to pay for the damages sustained by the delay. We believe that the trial court erred in determining that February 1, 1960 was the cut-off date for the computation of damages. The above date was fixed on the basis of allowing a reasonable time for closing of title after the decision of this court on November 16, 1959. The rule, which is well settled and applicable here, is that an intermediate reversal of a judgment does not discharge the surety — or, in the case at bar the principal — on an appeal bond, if the highest court subsequently reverses the intermediate court (*Consolidated Ind. & Ins. Co.* v. *Dein,* 233 App. Div. 380, and cases there cited; cf. *Self Service Super Market* v. *Harris,* 3 N Y 2d 615). It is also well settled that, where one has been wrongfully deprived of the possession of property, there is a presumption of damage measured by the legal rate of interest (*Phoenix Bridge Co.* v. *Keystone Bridge Co.,* 10 App. Div. 176, affd. 153 N. Y. 644; *Subin* v. *United States Fid. & Guar. Co.,* 12 A D 2d 49, 51). In the case at bar, that presumption prevails as to all items except the interest on the $16,000 down payment, which is governed by the agreement between plaintiffs and Ross — the "source and measure of liability" (*City of Yonkers* v. *Federal Sugar Refining Co.,* 221 N. Y. 206, 209), and which provides that the moneys be invested in United States Government bearer bonds. The interest yielded by such bearer bonds for the period in question is readily ascertainable. Beldock, P. J., Christ, Hill, Rabin and Hopkins, JJ., concur. [29 Misc 2d 781.]